E. L. JONES & COMPANY, INC., *v.* ROLAND S. UNRUH and MARY C. UNRUH.

(*December* 10, 1935.)

RODNEY, J., sitting.

*Charles L. Harmonson* for Warner W. Price, an execution creditor of Unruh.

*Charles L. Terry, Jr.*, for E. L. Jones & Company, Inc.

Superior Court for Kent County, No. 74, October Term, 1935.

RODNEY, J., delivering the opinion of the Court:

The petitions present several interesting questions. First, has a conditional vendee such an interest in the chattel covered by the conditional sale contract as to subject it to an attachment or levy at the instance of his creditor? It may be conceded that the great weight of authority is to the effect that, at common law, the vendee had no such interest, though the reasons for these decisions are far from satisfactory. It has been determined in a number of cases that, at common law, until the vendee had complied with the condition of payment of the amount due that he acquired neither title nor any interest which could be levied on by his creditors. 17 *R. C. L.* 155; 1 *Freeman on Executions* (*3d Ed.*), § 124; *Baker v. Hull,* 250 *N. Y.* 484, 166 *N. E.* 175. See cases collected in 61 *A. L. R.* 782.

Many of these cases state that the vendee acquired merely a possessory right while not in default. One case, indeed, *Mills v. Criss,* 205 *Ind.* 578, 187 *N. E.* 375, says this possessory right is one given for the specific purpose of enabling the vendee to perform his part of the contract. Just how the possession of a non-productive chattel could facilitate the payment of indebtedness is not entirely clear.

Upon close analysis it will be seen that many of the cases involve only the question of priority of rights between the execution creditor and the conditional vendor, the former claiming under the execution levy and the latter under his reservation of title. Of course this is not the true question for, concededly, a creditor of the vendee should have no superior claim against a valid reservation of title; the true question is whether the vendee has an interest, subordinate to that of the vendor, which can be reached by execution process at the instance of a creditor. Freeman says (*supra*) :

"We see no reason why his [vendee's] interest may not be

subject to execution, the purchaser at the execution sale acquiring the rights of the defendant in the writ, to wit, the right to take possession of the property and on compliance with the contract of purchase, to be vested with complete title thereto."

It was determined in *Flanagin v. Daws*, 2 *Houst.* 476, 486, that all equitable interests in lands (save those involved in an active trust) were liable to execution and sale in Delaware. This conclusion was based upon the fact that for many years Delaware had no Court of equitable jurisdiction and the cited case followed similar decisions in Pennsylvania where the same situation existed. It is unnecessary to consider the effect of this decision as to the liability to execution of equitable interests in chattels, for it seems clear that the stated condition of the general law and the great growth of installment buying and the consequent numerical increase of conditional sales were important factors leading to the enactment of uniform legislation concerning Conditional Sales, which, in Delaware, culminated in 1919, in the adoption of the *Uniform Conditional Sales Law* (*Laws of Delaware, Volume* 30, *c.* 192, *p.* 505). The conception that a conditional vendee who, having paid substantially all of the contract price but who defaulted on the last payment, acquired no right, interest or benefit of the payments save a possessory interest in the chattel until payment in full or until default, did not accord with modern and expanding views.

*Section* 13 of the *Uniform Conditional Sales Act* expressly states: "Unless the contract otherwise provides, the buyer may, without the consent of the seller, remove the goods from any filing district and sell, mortgage or otherwise dispose of his interest in them." The statute then provides that, prior to the removal, sale, mortgage or other disposition of interest, due notice of such intention shall be given to the vendor and in default of such notice the seller may re-take the goods. It is apparent, however,

as pointed out in *Continental Guaranty Corp. v. People's Bus Line,* 1 *W. W. Harr.* (31 *Del.*) 595, 117 *A.* 275, that, unless the contract so provides, the consent of the vendor is not required for the sale or disposition of the chattel, but it is requisite that the vendee give to the vendor the statutory notice of the disposition of the interest so that the vendor may know with whom he is to deal. The foregoing statute seems to be the clearest legislative expression of the existence of an interest in the vendee in the absence of restrictive terms in the contract—an interest which the vendee can dispose of and one which is entirely different from a mere possessory interest. When I here used this word "interest" it is used in direct contra-distinction to "title." The "title" of the conditional vendor who has complied with the provisions of the act is not disturbed and no vestige of title, as such, passes to the vendee until payment of the debt or other condition has been fulfilled. The mortgage, sale or other disposition of the interest by the conditional vendee is subordinated to the reservation of title in the seller.

The exact nature of the interest of the vendee is difficult to precisely define. It has been variously called "right," "interest," "property," and "special property." It is not solely an equitable interest, for certain rights are purely legal rights, viz., the right, when not in default, to have and maintain replevin proceedings for the possession of the chattel, even against the vendor, and the right to pay the amount due and succeed to full title and ownership. The vendee has, in some jurisdictions, been called the equitable owner (*Welch v. Harnett,* 127 *Misc.* 221, 215 *N. Y. S.* 540; *Carolina, C. & O. R. Co. v. Unaka Springs Lumber Co.,* 130 *Tenn.* 354, 170 *S. W.* 591) but, if so, he must be an equitable owner vested with legal rights, and the term "equitable" refer solely to the "ownership" as connected with title. A fact that is entitled to some significance is the

attitude of the Legislature toward a conditional vendee. Under the *Motor Vehicle Code* (36 *Del. Laws, c.* 10) the conditional vendee is expressly included in the term "owner," and in the registration of automobiles it is the conditional vendee who is listed as "owner."

If a buyer or vendee under a conditional sale contract, then, has an interest which he can voluntarily sell, mortgage or otherwise dispose of, then such interest must be and rest in him even though he does not voluntarily dispose of such interest. If an interest is in him which he can voluntarily dispose of, it is difficult to see why such interest may not be seized on involuntary process at the instance of his creditors—subject always to the right or title of the vendor. Certainly the voluntary character of the disposition of interest is no criterion. The right or interest is disposable because it is such an interest and it does not cease to be such an interest because the disposition is involuntary. I can see little basis in principle for the holding of *Picone v. Freeman* ( *Sup.*), 115 *N. Y. S.* 128, where it is said that a conditional vendee "has a vendible but not a leviable interest."

The Courts of many jurisdictions (including some in which the interest of the vendee may not be levied on) have held that the buyer or vendee may mortgage his interest, *Robinson v. Bird,* 158 *Mass.* 357, 33 *N. E.* 391, 35 *Am. St. Rep.* 495; *Dame v. C. H. Hanson & Co.,* 212 *Mass.* 124, 98 *N. E.* 589, 40 *L. R. A.* (*N. S.*) 873, *Ann. Cas.* 1913C, 329; *Rowe Vending Co. v. Morris,* 276 *Mass.* 274, 177 *N. E.* 112; *Cutting v. Whittemore,* 72 *N. H.* 107, 54 *A.* 1098; *Levy v. Horn,* 90 *Misc.* 624, 153 *N. Y. S.* 913; *American Soda Fountain Co. v. Najarian,* 119 *Misc.* 219, 195 *N. Y. S.* 555, may lease the interest, *Brigham v. Thrailkill,* 166 *Ark.* 548, 266 *S. W.* 958, may exchange the interest, *Loden v. Paris*

*Auto Co.,* 174 *Ark.* 720, 296 *S. W.* 78, or may make a gift of it, *Hatch v. Lamos,* 65 *N. H.* 1, 17 *A.* 979, 4 *L. R. A.* 404.

It seems most anomalous to deny that a conditional vendee has an interest which can be levied on and sold under execution proceedings and yet recognize that he has an interest which he can mortgage, when the non-payment of the mortgage results in foreclosure, levy and judicial sale of the mortgaged interest. Such was the case in *American Soda Co. v. Najarian, supra.*

Many cases have held that the creditors of the vendee have a right to have the interest of the vendee sold under execution proceedings. *Moody v. U. S. F. & G. Co.,* 223 *Ala.* 507, 137 *So.* 308; *Roachell v. Gates,* 185 *Ark.* 350, 47 *S. W.* (2d) 35; *Coffin v. Northwestern Mut. Fire Ass'n,* 43 *Idaho* 1, 249 *P.* 89, 48 *A. L. R.* 1225; *Arthur McArthur Co. v. Beals,* 243 *Mass.* 449, 137 *N. E.* 697; *Hervey v. Dimond,* 67 *N. H.* 342, 39 *A.* 331, 68 *Am. St. Rep.* 673; *Truitt v. Patten,* 75 *Utah* 567, 287 *P.* 175; *Hess v. Starwich,* 149 *Wash.* 679, 272 *P.* 75; *Nevada Motor Co. v. Bream,* 51 *Nev.* 89, 269 *P.* 602, 61 *A. L. R.* 776; 3 *Jones on Chattel Mortgages & Conditional Sales,* §§ 1263, 1267, 1378; 1 *Williston on Sales* (2d) *Ed.),* § 326; 2A *Uniform Laws Anno., pp.* 32-36. See 4 *Washington Law Review* 89; 13 *Minn. Law Review* 247.

Some cases, like *Moody v. U. S. F. & G. Co., supra,* have held that the interest of the conditional vendee could be sold on execution prior to the default of the vendee, but not after. It is difficult to see how default itself could establish the distinction unless the conditional vendor had exercised an existing option to repossess the chattel after such default. If a vendor does not choose to avail himself of any benefit arising from a delayed payment but waives the default, I see no change in the status of the vendee. The

distinction, however, is not of value in the present case, for here the execution creditor levied on the interest of the vendee on May 2d, 1933, the day after the execution of the conditional sale contract, when the vendee could not have been in default.

While the question as to whether or not a conditional vendee has a leviable interest has never been directly determined in Delaware, yet such conclusion was tacitly recognized in *Starr v. Govatos*, 3 *W. W. Harr.* (33 *Del.*) 66, 130 *A.* 392, 394. There the conditional sale contract provided that the vendee should keep the chattel "free and clear of and from any and all liens and encumbrances," and in default of the due performance of this covenant the vendor had the right of repossession. A creditor of the vendee issued an execution and levied on the chattel. In a replevin suit by the vendor to recover possession, pursuant to the contract, the Court held the levy by a creditor of the vendee created a "lien or encumbrance," saying "that the attachment of the automobile by the creditors of the vendee constituted a lien or incumbrance, we believe, cannot be seriously questioned." If the levy was not valid or if the vendee had no interest to be levied on, then the execution could not have established any lien or encumbrance, and the vendor would not have been entitled to recover possession of the chattel.

In arriving at the conclusion that the conditional vendee in the present case had an interest which could be reached by execution process, I have considered both principle and the enabling effect of the statute which recognized an interest in the vendee which he could sell, mortgage or "otherwise dispose of" when the contract did not otherwise provide. The contract in the present case did not prohibit disposition of interest, but only provided that if the interest was disposed of without the consent of the vendor, then such action, at the option of the vendor,

would operate as an acceleration of payments and the vendor could repossess the goods. In such case the vendor was then required to sell the chattel, apply the proceeds to the debt and account to the vendee for any surplus.

2. Having determined that the vendee (Unruh) had a leviable interest which was seized by the execution issued at the instance of Price (a creditor), it now remains to determine the extent of that interest. This may include the determination of the effect of the recovery of judgment on the notes held by Jones (conditional vendor), the execution issued thereon, the levy on the goods covered by the conditional sales contract as the goods of Unruh, and the purchase by Jones of said goods at the execution sale. Attention is drawn to, and reliance made upon, *Section* 24 of the *Uniform Conditional Sales Act* concerning "election of remedies," which provides, as follows: "After the retaking of possession as provided in *Section* 16 the buyer shall be liable for the price only after a resale and only to the extent provided in *Section* 22. Neither the bringing of an action by the seller for the recovery of the whole or any part of the price, nor the recovery of judgment in such action, nor the collection of a portion of the price, shall be deemed inconsistent with a later retaking of the goods as provided in *Section* 16. But such right of retaking shall not be exercised by the seller after he has collected the entire price, or after he has claimed a lien upon the goods, or attracted [attached] them, or levied upon them as the goods of the buyer." The quoted statute, however, in my judgment, has no relevancy to this case. It only purports to make certain the rights of the parties arising from the exercise of the right of repossession as one of the alternate or successive statutory remedies. The original vendor here has taken no statutory action to recover possession—in fact, he now has such possession, as the purchaser at the execu-

tion sale. Strictly speaking, there is presented no question of statutory "election of remedies" or "waiver of remedies" but there may be a question as to whether Jones, by his levy on the tractor as the property of Unruh, did not repudiate or waive any reservation of title in himself (Jones) and recognize Unruh as the real and actual owner.

■■ I must now consider the nature and effect of Jones' execution and levy. Did Jones levy on merely the interest of Unruh the vendee, or did he levy on the entire ownership of the tractor? The answers to these questions might, conceivably, have importance in some situations but they are not important in this case, for the answer to either suggestion leads inevitably to the same conclusion. If Jones levied merely on the interest of the vendee, then that is precisely the same interest that had already been levied on by Price, and we have the familiar instance of a right or interest being sold subject to a prior levy. If on the other hand Jones levied on and sold under his execution the entire and every interest in the chattel, then is brought into play the doctrine of waiver of reservation of title in himself. The authorities on this problem of waiver of reservation of title are in some conflict when the questions arose in connection with the effect of suits on the notes represented by the conditional sale and in some other proceedings, but when the vendor has levied on and sold the property as the property of the vendee then, so far as I have found, they are in full accord. The principle is that one cannot levy on his own property, and a direction to levy on specific property as the property of the defendant in the writ of execution operates as a waiver of his own reservation of title and an acknowledgment that the defendant is the real owner. The authorities on this point are collected in 2 *Williston on Sales* (2d Ed.), § 571; 3 *Jones on Chattel Mortgages and Conditional Sales*, § 1312; *2A Uniform Laws*

*Anno., page* 177. Exhaustive notes appear in 12 *A. L. R.* 516, and 56 *A. L. R.* 241.

While this question of waiver of reservation of title might arise when the entire interest in the chattel is levied on, by the vendor, as the property of the vendee yet, on principle, I can see no application of the doctrine when the levy is limited to the interest of the vendee. If any creditor of the vendee has a right to levy on the vendee's interest in the chattel, then I can see no reason why the vendor has not the same right to levy on that same interest and if this be true there would be no "waiver of reservation" by the vendor if the levy be limited to the interest of the vendee and not assume to bind that interest which had, theretofore, been in the vendor.

A situation somewhat similar to the present case was presented in *Wright v. Pierce,* 4 *Hun* (*N. Y.*) 351. There, goods were sold under a conditional sales contract. The conditional vendee mortgaged his interest. The vendor, Pierce, brought suit, recovered judgment and levied on the property covered both by the conditional sale contract and the mortgage. The Court held that the vendor, by his levy, had waived the reservation of title, and had elected to treat the sale as absolute. The Court then said: "The effect of such election in respect to the plaintiff [mortgagee], was the same as if the right to make it and reclaim the said goods, had never existed. It operated, by relation, to give validity and effect to the plaintiff's mortgage as of its date." The theory of that case must have been that it was not the levy and waiver by the vendor that vested the substantive rights in the vendee but that these rights had been transferred by the original sale. The original sale conveyed a defeasible possession and interest to the vendee and the only limitation on his right was the reservation of title in the vendor, making the sale conditional. When the vendor

waived his reservation of title it was tantamount to saying that the original sale had been an absolute one and not conditional: the waiver of reservation merely removed the sole limitation on the pre-existing rights so that what was before a defeasible possession and interest became an indefeasible one. The levy made no new sale—it was a confirmation or recognition of the character of the original one.

In *Butler v. Dodson,* 78 *Ark.* 569, 94 *S. W.* 703, it appeared that Dodson sold chattels to one Meehan, the plaintiff's intestate, under a Conditional Sale, reserving title in himself. Meehan mortgaged the chattels to one Plair. Subsequently Dodson brought suit on his notes and attached and sold the chattels as property of Meehan. It was held that the attachment and sale affirmed the original sale and waived the reservation of title, and the mortgage was paid in full from the proceeds of the attachment sale.

In *Francis v. Bohart,* 76 *Or.* 1, 143 *P.* 920, 147 *P.* 755, *L. R. A.* 1916*A,* 922, the plaintiff sold chattels to one Thienes under a Conditional Sale. Thienes sold some of these to Bohart. Francis brought suit against Thienes on the original indebtedness and levied on some of the goods covered by the Conditional Sale. Francis then brought replevin against Bohart and it was held his levy on part of the goods covered by the Conditional Sale confirmed the title in Thienes and made the sale to Bohart good.

In *Albright v. Meredith,* 58 *Ohio St.* 194, 50 *N. E.* 719, chattels were sold under Conditional Sale. The vendee mortgaged his interest. The vendor brought suit on notes and levied on the goods. It was held he waived his reservation of title, confirmed the sale and became as a general creditor. The mortgage was held to have priority.

For Jones, much reliance is placed in *A. F. Chase &*

*Co. v. Kelly,* 125 *Minn.* 317, 146 *N. W.* 1113, *L. R. A.* 1916*A,* 912. In that case a chattel sold under Conditional Sale was returned to the vendor for repairs. The vendor kept the chattel for the cost of repairs and also retained possession for the installments which had then come due and were in default. After some months' delay the vendor brought suit to recover the defaulted payments. The Court held the bringing of this suit was a waiver of the vendor's reservation of title and the vesting of the title in the buyer. The action in the reported case was one of conversion by the vendee against the vendor and the Court held the vendee had lost his right of possession by default and was reinvested in this right of possession by the vendor's suit on the notes, and allowed the vendee damages for the use of the car from the time of suit on the notes until the trial of the trover action. I do not agree with that case. The fundamental error is that when the vendor had repossessed the chattel and held it because of defaulted payments, that was the election of remedy and while that condition existed the vendee was not liable on the notes. The resumption of possession and retention of the property operated as a rescission of sale. The vendor could not both possess the chattel and collect the price. Such is the exact provisions of our own Statute.

If the right or interest of a conditional vendee becomes vested in another by voluntary action, viz., sale, mortgage or transfer, or encumbered by involuntary action, as by execution levy, and then the reserved title of the vendor is obliterated by payment in full or by his own voluntary relinquishment or disavowal then, in my opinion, the interest which had originally been in the vendee blossoms and expands in the hands of the then holder to the same extent as if it had remained in the original vendee. To this extent does the analogy of a mortgage extend—and the interest of

a mortgagor, being conveyed subject to the mortgage, is increased and perfected by the satisfaction or obliteration of the mortgage itself.

In the present case if Jones' levy and execution sale included all rights in the tractor and if the levy admitted that the sale to Unruh had been an absolute sale and that full ownership was in Unruh, then it must be true that the interest of Unruh was sold and this either was the same interest or included the interest that had already been levied on by Price.

Under any theory of the case it would seem that the execution of Price is, subject to the payment of costs, the first lien on the fund and an order will be made to that effect.

The actual return of the Sheriff on the execution in the present case simply shows that the tractor, together with other property of the defendant, was levied on. The levy was not specifically limited to the then existing interest of Unruh.